J-S43008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARFIELD HARRIS | : | |
| | : | |
| Appellant | : | No. 1069 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 3, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001469-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 27, 2023**

Appellant, Garfield Harris, appeals from the February 3, 2022 judgment of sentence entered in the Delaware County Court of Common Pleas following his conviction of Rape of a Child, Indecent Assault, Endangering the Welfare of Children, Involuntary Deviate Sexual Intercourse ("IDSI") with a Child, and Corruption of Minors.[1]  Appellant challenges the trial court's denial of his motion to strike two jurors, the sufficiency of the evidence in support of his convictions, and the trial court's imposition of sexual offender registration. After careful review, we affirm in part, vacate in part, and remand with instructions.

The relevant facts and procedural history are as follows.  In the fall of 2020, M.L. ("Victim") revealed to his mother ("Mother") that Appellant,

---

[1] 18 Pa.C.S. §§ 3121(c), 3126(a)(7), 4304(a)(1), 3123(b), 6301(a)(1)(ii), respectively.

Mother's former paramour and the father of Victim's half-siblings, had sexually abused Victim. According to Victim, Appellant began abusing Victim when Victim was approximately 6 or 7 years old, and the abuse continued until he was at least 10 years old, in approximately 2013.[2]

Following this revelation and the subsequent investigation by police, on December 15, 2020, the Commonwealth charged Appellant with, *inter alia*, the above crimes. The Criminal Information pursuant to which the Commonwealth charged Appellant misstated the date of the offenses as September 24, 2020, rather than listing the range of dates of abuse alleged by Victim.

On November 15, 2021, Appellant's jury trial began. Relevant to the instant appeal, during *voir dire*, Prospective Jurors 1 and 25 each suggested that they might have some difficulty serving on a jury because of the nature of the charges as sex offenses. Each also indicated, however, that they could be fair and impartial. Nevertheless, Appellant's counsel moved to strike the jurors for cause. When the trial court denied counsel's motions to strike, Appellant's counsel elected to use peremptory challenges to exclude both jurors.

The jury convicted Appellant of the above listed charges. As relevant to Appellant's final question presented, the jury found that Appellant had engaged in "a course of conduct" related to several charges but did not make

---

[2] Victim was born in April 2003, such that the alleged abuse at age 10 would have occurred in 2013. Trial Ct. Op., 2/1/23, at 2.

- 2 -

any specific findings as to the dates of the course of conduct.[3] On February 3, 2022, the trial court sentenced Appellant to an aggregate term of 15 to 30 years' incarceration followed by five years of probation. The court also ordered Appellant to register as a "Tier III" sexual offender but did not specify whether Appellant was subject to the requirements of Subchapter H or Subchapter I of the current version of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA II").[4] The court did not designate him a Sexually Violent Predator ("SVP").

Following the trial court's denial of Appellant's amended post-sentence motion, the trial court and Appellant both complied with Pa.R.A.P. 1925. Appellant raises the following issues on appeal:

1. Whether the trial court erred in denying Appellant's motion to strike for cause Jury Panelist #1, where the panelist expressed concerns about the nature of the charges and worried his emotions would interfere with his ability to be a fair and impartial juror?

2. Whether the trial court erred in denying Appellant's motion to strike for cause Jury Panelist #25, where the panelist expressed concerns about the nature of the charges and worried her emotions would interfere with her ability to be a fair and impartial juror?

3. Whether the evidence is sufficient to sustain the convictions for involuntary deviate sexual intercourse, indecent assault, endangering the welfare of a child, corruption of minors, and

---

[3] Verdict, 11/16/21, at 2-3.

[4] Trial Ct. Order, 2/3/22. As only Revised Subchapter H is denominated using "Tiers," 42 Pa. C.S. § 9799.14, it appears that the trial court in its sentencing order intended to impose registration requirements under Revised Subchapter H, consistent with the trial court's Supplemental Pa.R.A.P. 1925(a) Opinion.

rape since the prosecution failed to prove beyond a reasonable doubt that any alleged conduct occurred on or about September 24, 2020, the offense date charged?

4. Whether the trial court's imposition of sexual offender registration is illegal since Appellant's alleged conduct straddles the effective dates of Subchapters H and I, the jury never made a finding as to offense dates, and Subchapter H's more restrictive provisions are unconstitutional even if they apply over Subchapter I.

Appellant's Brief at 7.

**A.**

In his first two issues, Appellant challenges the trial court's denial of his motion to strike Prospective Jurors 1 and 25 for cause, which prompted Appellant to use two peremptory challenges to remove the prospective jurors. *Id.* at 17-28.

In reviewing the trial court's decision not to strike Jurors 1 and 25, we are mindful that "[g]enerally, the decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion." *Shinal v. Toms*, 162 A.3d 429, 440 (Pa. 2017) (citation and quotation marks omitted).

"Challenges for cause are essential means by which to obtain a jury that in all respects is impartial, unbiased, free from prejudice, and capable of judging a case based solely upon the facts presented and the governing law." *Id.* at 438. Trial courts must "grant a challenge for cause in two scenarios: when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses or, alternatively, when the juror demonstrates a likelihood of prejudice by his or her conduct

and answers to questions." ***Id.*** at 440 (citation and internal quotation marks omitted). "When a determination of a juror's ability to be impartial depends upon the juror's answers and explanations, [appellate courts should] afford the trial court's judgment much weight[,]" as the trial court is able to observe the prospective juror's demeanor and listen to the answers. ***Id.*** at 442.

Appellant argues that the court abused its discretion in not striking for cause Prospective Juror 1, a corrections officer, because even though the juror agreed to follow the court's legal instructions, he confessed his uneasiness with the serious nature of the charged offenses. Appellant's Brief at 19. In support of this argument, Appellant emphasizes the juror's admission that his "emotions might overpower his logic in a sex case." ***Id.*** (citing N.T., 11/15/21, at 26-27). Appellant also argues that Prospective Juror 1 failed to make "any assurances that he would be fair" and impartial. ***Id.*** at 19, 23. Appellant claims that this juror's agreement to follow the court's legal instructions was outweighed by his "sincere assertions regarding the nature of the charges." ***Id.*** at 23. Last, he argues that the court erroneously concluded that its decision did not prejudice Appellant because the denial of his motion to strike "forced [Appellant] to squander one of his eight valuable peremptory challenges to remove an unsuitable panelist who never should have been eligible to sit on the principal jury in the first place." ***Id.***

The following interaction with Prospective Juror 1 occurred during *voir dire*:

The Court:  You indicated there was something about the nature of the charges?

Juror 1:  It's just the – I guess the criminal – the criminal case that it is, it's just very serious, those charges.  I'm not sure how I can go about actually reviewing all the information.  This is my first time being on a jury duty selection trial, so –

The Court:  Well, let me just explain something to you.  When you go back to deliberate, you'll get a written copy of the jury instructions as to each of the charges.

Juror 1:  Okay.

The Court:  So that will give you – you won't have to guess at what has to be determined, you'll have that in writing.

Juror 1:  Right.  Okay.

The Court:  Will that help you?

Juror 1:  Yeah, it would help.

The Court:  Okay.  What about, you had someone in a law-related field?

Juror 1:  I personally work in corrections.

The Court:  Where?

Juror 1:  Montgomery County

The Court:  And what do you do?

Juror 1:  I'm a Correctional Officer, so security, control room.

The Court:  At Eagleville?

Juror 1:  Yep.

The Court:  Would that prevent you from being fair and impartial?

Juror 1:  I don't believe so, no.

The Court:  You'll follow the instructions of law?

Juror 1:  Yep.

The Court:  Any follow-up, counsel?

Mr. Wright (Appellant's counsel): When you indicated the nature of the charges, what's your specific concern?

Juror 1:   Just rape.  I've never really been involved in anything like this before, so –

Mr. Wright:  Okay

Juror 1:   And that's a very serious charge.  I'm not sure how my mind and process would go about all the details and evidence going through the case?

Mr. Wright:  [] When you say you're not sure how your mind would go, are you worried your emotions are going to take over?

Juror 1:   Yeah.  That's where I'm going with that.

Mr. Wright:   And you're concerned your emotions are going to stand in the way of your logic?

Juror 1:   Not necessarily, but it's a possibility in that matter.

N.T., 11/15/21, at 25-27.

The trial court explained its decision to deny Appellant's motion to strike

for cause Prospective Juror 1 as follows:

Here, Jury Panelist #1 was a Corrections Officer in Montgomery County, Pennsylvania.  When asked whether that would prevent him from being fair and impartial, he answered in the negative. When asked if he could follow the instruction of law, he answered in the affirmative.   While it could be argued that he has a "financial" relationship with Montgomery County, there is nothing in the record indicating his inability or unwillingness to serve as a fair and impartial juror.  Jury Panelist #1 was willing and able to eliminate the influence of any scruples and render a verdict according to the evidence.  Because the scope of *voir dire* rests in the sound discretion of the trial judge, and this [c]ourt did not commit palpable error by allowing Juror #1 to remain in the pool, Appellant's claim that this [c]ourt erred in refusing to exclude him from the jury pool is without merit.

Trial Ct. Op., 6/30/22, at 12.  We agree.

Following our review, we conclude that the trial court properly exercised its discretion in determining that this juror was fit to serve and in denying Appellant's challenge for cause. While the prospective juror indicated concern regarding the seriousness of the charge, we find nothing in the record to demonstrate that Prospective Juror 1 was unable or unwilling to serve as a fair and impartial juror. Moreover, we defer to the trial judge's ability to observe the demeanor of the prospective juror in answering the questions posed. Accordingly, this issue does not merit relief.

Appellant proffers a similar argument with respect to the trial court's denial of his motion to strike Prospective Juror 25 for cause. He argues that notwithstanding Prospective Juror 25's agreement that she could be fair, impartial and apply the law as provided by the court, the juror's admission that, as a teacher who works with children with autism, she was "concerned" about deciding sexual allegations against a minor and her concession that her emotions might interfere with her judgment rendered her incapable of serving on the jury. Appellant's Brief at 25-27 (quoting N.T., 11/15/21, at 55-57). Appellant acknowledged that the juror agreed that she could be fair but argues that her subsequent answers to the court's and counsel's questions, including her pledge to "try [her] best" to render a fair verdict, were inadequate assurance that she could sit in fair judgment. *Id.* at 27-28.

The following interaction with Prospective Juror 25 occurred during *voir dire*:

The Court: You indicated there was something in the nature of the charges?

\*\*\*

Juror 25: Yeah. I have taught all my life, I'm a -- I work with kids with autism. So just –

\*\*\*

The Court: Anything about the nature of the charges themselves that would prevent you from being fair and impartial?

Juror 25: Because the charges were against a child. So that -- I just -- it's just sensitive.

The Court: You wouldn't be able to listen to the testimony and --

Juror 25: No, I think I would. I just think that there is, like, a gut instinct in me that I just --

The Court: Okay. But knowing now that -- what the standard is, that you have to listen to testimony and evidence --

Juror 25: Yes.

The Court: -- and apply the law as I give it, and be fair and impartial, can you do that?

Juror 25: Yes.

\*\*\*

Mr. Wright: So specifically[,] when you say you have a gut instinct, is that you have a concern because the complaining witness in this case is a juvenile or a child that --

Juror 25: Correct.

Mr. Wright: You're concerned that might get the emotions going and kind of takes the way of logic.

Juror 25: Correct.

Mr. Wright: Okay.

Juror 25: I will try my best, though, absolutely.

N.T., 11/15/21, at 55-57.

The trial court explained its decision not to strike Prospective Juror 25 for cause as follows:

> Jury Panelist #25 works with children with [a]utism. When asked whether that would prevent her from being fair and impartial, she answered in the negative. When asked if she could follow the instruction of law, she answered in the affirmative. While it could be argued that she has "such a close relationship, familiar, financial, or situational" relationship with her work with [a]ustic children, there is nothing in the record indicating her inability or unwillingness to serve as a fair and impartial juror. Jury Panelist #25 was willing and able to eliminate the influence of any scruples and render a verdict according to the evidence.

Trial Ct. Op. at 12. The trial court, thus, concluded that it did not abuse its discretion in allowing Prospective Juror 25 to remain in the jury pool. We agree.

Following our review, we conclude that the trial court properly exercised its discretion in determining that this juror was fit to serve and in denying Appellant's challenge for cause. In particular, Prospective Juror 25 assured the court that, notwithstanding the sensitive nature of the charges and her experience working with children, she would follow the court's instructions and exercise fair and impartial judgment. As with Prospective Juror 1, we defer to the trial judge's assessment of Prospective Juror 25's demeanor in answering the questions. Appellant is, thus, not entitled to relief on this claim.

**B.**

In his third issue, Appellant purports to challenge the sufficiency of the evidence in support of each of his convictions. In particular, he asserts that the Commonwealth presented insufficient evidence to prove that he

- 10 -

committed any of the charged offenses on September 24, 2020, the offense date specified in the charging documents. Appellant's Brief at 29-32. Appellant argues that his convictions should be vacated because the Commonwealth proffered evidence that he committed the charged offenses no later than about 2013, but both the Criminal Complaint and the Bill of Information allege that all offenses occurred on or about September 24, 2020, at 15:30 hours. *Id.* at 31-32.

This Court recently reiterated that "a defendant waives his challenge to a defect in the criminal information if the defendant was placed on notice of the correct charge, defended against the correct charge, and made no objection to the discrepancy in the charged offense." ***Commonwealth v. Raymond***, 233 A.3d 809, 814 (Pa. Super. 2020). ***See also Commonwealth v. Mitchell***, 335 A.2d 521, 525-26 (Pa. Super. 1975) (explaining that where a formal defect on the face of an indictment exists, a defendant must object to the defect in order for the trial court to consider whether to permit the Commonwealth to amend the indictment to conform to the evidence; demurring to the evidence, which raises a challenge to the sufficiency of the evidence, is not the same as asserting that the evidence does not conform to the allegations of the indictment).

Here, although the charging documents misstated the date of the offense as September 24, 2020, the Affidavit of Probable Cause, which the Commonwealth disclosed to Appellant prior to trial, indicated that the victim

alleged that Appellant had abused him "until he was 10 years old,"[5] which was in approximately 2013. Appellant did not object to the discrepancy between the offense date listed in the charging documents and the allegations that he abused the victim from approximately 2009 to 2013. Moreover, Appellant defended himself against the victim's allegations that the abuse occurred within that timeframe. Pursuant to the above authority, Appellant has waived his challenge to a defect in the criminal information by having notice of it, failing to object to it, and defending against the correct charge.

### C.

In his final issue, Appellant challenges the legality of the SORNA II registration requirements imposed on him, asserting that the requirements of Subchapter I should apply, rather than those of Subchapter H.

A challenge to the legality of a sentence presents a question of law for which "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Alston***, 212 A.3d 526, 528 (Pa. 2019).

The General Assembly enacted SORNA II in response to the determination that aspects of SORNA I were unconstitutional in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), and ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2017) (***"Butler I"***).[6] 42 Pa.C.S

---

[5] Affidavit of Probable Cause, 12/15/20, at 1.

[6] In ***Muniz***, the Supreme Court held "that SORNA [I]'s registration requirements constituted punishment and their retroactive application
*(Footnote Continued Next Page)*

§ 9799.51(b)(4). As relevant to Appellant's claims, the General Assembly revised Subchapter H, 42 Pa.C.S. §§ 9799.10-9799.42, to apply only to individuals who committed a sexually violent offense on or after December 20, 2012. *Id.* § 9799.12 (defining "sexually violent offense"). It additionally added Subchapter I, *id.* §§ 9799.51-9799.75, to address those who committed designated offenses prior to December 20, 2012, if the offender was subject to registration requirements on that date. *Id.* § 9799.52. The registration requirements of Subchapter H, which are based on SORNA I, are more onerous than those under Subchapter I. *See Commonwealth v. Lacombe*, 234 A.3d 602, 607 n.4, 626 (Pa. 2020) (declaring the Subchapter I registration requirements to be non-punitive). Nevertheless, based upon his convictions, Appellant would be subject to lifetime registration under either subchapter. 42 Pa.C.S. §§ 9799.15(a)(3); 9799.55(b).

The General Assembly did not expressly address offenders, such as Appellant, whose offenses are alleged to occur before and after the December 20, 2012 boundary between Subchapters H and I. This Court addressed that issue in *Alston*, where the alleged offenses occurred between May 28, 2009

---

constituted a violation of the constitutional prohibition against *ex post facto* laws." *Commonwealth v. Lacombe*, 234 A.3d 602, 615 (Pa. 2020) (citation omitted).

In *Butler I*, this Court held that SORNA I's SVP designation process was unconstitutional. *Butler I*, 173 A.3d at 1217-18. The Supreme Court subsequently overturned this holding in *Commonwealth v. Butler*, 226 A.3d 972, 976 (Pa. 2020), concluding that the SVP requirements did not constitute criminal punishment and thus were not subject to the constitutional standards considered in *Butler I*.

to May 1, 2013, but the jury did not determine the dates of the offenses. *Alston*, 212 A.3d at 530. The Court opined that absent "a specific finding by the chosen factfinder of when the offenses occurred, [an offender] is entitled to the lowest punishment." *Id.* (relying upon *Alleyne v. United States*, 570 U.S. 99 (2013), and *Muniz*). Accordingly, the court remanded for imposition of the lesser requirements of Subchapter I.[7] *Id.*

Relying upon *Alston*, Appellant asserts that he should be subject to the requirements of Subchapter I because the jury did not specifically find that the offenses occurred after December 20, 2012. Appellant's Brief at 33-34. Appellant asks this Court to "vacate that portion of the judgment and order Subchapter I registration." Appellant's Brief at 34.[8]

---

[7] Underlying the holding in *Alston*, and its reliance on *Alleyne* and *Muniz*, is a presumption that Revised Subchapter H's registration requirements are punitive, which is an open question. Indeed, the punitive nature and the constitutionality of Subchapter H's registration requirements are currently before the Pennsylvania Supreme Court in *Commonwealth v. Torsilieri*, 97 MAP 2022, following the remand ordered in *Commonwealth v. Torsilieri,* 232 A.3d 567 (Pa. 2020). Additionally, the Supreme Court has held the Commonwealth's petition for allowance of appeal in *Alston*, pending its decision in *Torsilieri*. *Commonwealth v. Alston*, 399 MAL 2019 (Order of 10/17/22).

As we observed in *Alston*, however, "this Court is bound by existing precedent and continues to follow controlling precedent unless it is overturned by our Supreme Court[.]" *Alston*, 212 A.3d at 529 n.4 (citation omitted). Accordingly, we are constrained to apply the holding of *Alston* to the instant case.

[8] Appellant additionally argues that the registration requirements of Subchapter H are unconstitutional for several reasons which mirror the infirmities asserted in *Torsilieri*. Appellant's Brief at 35-38. Given that we
*(Footnote Continued Next Page)*

- 14 -

In its Supplemental Rule 1925(a) Opinion, the trial court found **Alston** distinguishable.[9] It opined that "[w]hile the tipping point in the **Alston** case was the lack of a specific date, in the present case the jury's finding of a continuing course of conduct overcomes that impediment." Trial Ct. Op., 2/1/23, at 6. The court reasoned that "[t]he [V]ictim's testimony, coupled with the jury's finding of a course of conduct, unequivocally established that Appellant continued to commit his sexual offending into 2013." **Id.** at 7. Accordingly, the court opined that Subchapter H applies to Appellant. We respectfully disagree.

While Victim's testimony supports that conclusion that Appellant abused Victim in 2013, the Verdict merely queried "Do you find, beyond a reasonable doubt, that there has been a course of conduct of indecent assault by the defendant?" Verdict, 11/16/21, at 2. Thus, the Verdict does not demonstrate that the jury found that Appellant's course of conduct continued after December 20, 2012. As we are bound by this Court's holding in **Alston**, we conclude that Appellant is subject to Subchapter I. Accordingly, we vacate the portion of the sentence imposing registration requirements under Subchapter H and remand for the trial court to amend the sentencing order

conclude that Appellant is subject to Subchapter I, and not H, we do not address these claims that challenge Subchapter H and find moot the parties' requests to stay pending **Torsilieri**.

[9] On January 12, 2023, this Court ordered the trial court to file a supplemental opinion and "includ[e] specific findings regarding which subchapter of SORNA II applies to Appellant[.]" Superior Court Order, 1/12/23.

and to instruct Appellant as to the requirements under Subchapter I. The judgment of sentence is affirmed in all other respects.

Judgment of sentence affirmed in part and vacated in part; case remanded with instructions. Jurisdiction relinquished.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *3/27/2023*